UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA FAIR HOUSING ACTION CENTER,**   Plaintiff, <br> v. <br> **AZALEA GARDEN PROPERTIES, LLC**   Defendant | NO. 22-00074 <br><br> JUDGE JAY C. ZAINEY <br><br> MAG. JUDGE NORTH |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Azalea Garden Properties, LLC ("*Azalea Garden*") moves to dismiss all claims made against it by Plaintiff Louisiana Fair Housing Action Center ("*LaFHAC*") pursuant to Federal Rules of Civil Procedure 12(b)(1) or, alternatively, 12(b)(6).  LaFHAC ignores Azalea Garden's actual written policy. Instead, LaFHAC pretends that Azalea Garden employs a different and more restrictive policy. This assumption is pure speculation and based only on statements by Azalea Garden's employees which LaFHAC acknowledges have nothing to do with implementing and applying Azalea Garden's policy.  The hypothetical nature of these claims render them not ripe for consideration.  The Complaint further fails to allege other facts necessary to support ripeness or a valid claim.  As such, LaFHAC does not meet its burden to survive Rule 12(b)(1) or 12(b)(6) and its claims should be dismissed.

### I.   FACTUAL BACKGROUND

"LaFHAC is a nonprofit entity with a mission to eradicate housing discrimination in Louisiana."  Rec. Doc. 1 at ¶ 11 (Complaint).  Azalea Garden is the owner and operator of an apartment complex known as "Azalea Gardens" located in Jefferson, Louisiana. *Id.* at ¶ 8. LaFHAC claims that Azalea Garden violates the Fair Housing Act ("FHA") by "enforce[ing] a

policy of automatically excluding any person with a record of a criminal conviction or arrest from renting or living in an apartment at Azalea Gardens." *Id.* at ¶ 1.

> But LaFHAC concedes that this is not the actual and express policy of Azalea Garden:
>
> The application materials for Azalea Gardens state the following policy concerning an applicant's criminal history: "If the criminal background check reveals any of the following, it will be grounds for rejecting an application: [a]ny [m]isdemeanor conviction in the preceding five (5) years including but not limited to a person or property misdemeanor; [a]ny [f]elony convictions (with no time limit); . . . [a]ny drug related convictions, including petty offenses; . . . [and] [a]ny of the above related charges resulting in 'Adjudication withheld' and/or 'deferred Adjudication.'"
>
> *Id.* at ¶ 14 (internal footnote omitted) (alterations in original).

LaFHAC claims that "[d]espite the [policy's] stated limits" its testing investigation revealed that Azalea Garden "excludes all applicants with any criminal history, regardless of the age and nature of the conviction, evidence of rehabilitation, or any other factor related to whether a specific person poses any threat to safety." *Id.* at ¶ 16.  LaFHAC further asserts that the policy's stated exclusion of all persons with "[a]ny drug related convictions, including petty offenses" unlawfully discriminates against and denies reasonable accommodation to people recovering from addiction who are not currently using a controlled substance, in violation of the Fair Housing Act." *Id.* at ¶ 17.  However, as outlined below, these legal conclusions are founded on rank speculation and are not supported by LaFHAC's factual allegations.  In fact, in some instances LaFHAC's claims are ***contradicted*** by their own factual allegations.

LaFHAC bases its allegations on the experience of five testers.  The first tester, MW, visited the property in 2015 (more than six years ago) and asked one of the agents, Jordan, how a seven-year-old misdemeanor would affect her chances of being approved.  *Id.* at ¶¶ 20-22.  Jordan allegedly responded that "he was not exactly sure" what criminal offenses would be disqualifying.  *Id.* at ¶ 22.  MW allegedly spoke with another Azalea Garden employee, Danielle, who was asked

2

if the misdemeanor would prevent her from being approved. Danielle allegedly responded, "If it shows up, yeah." *Id.* at ¶ 23.

The next tester, EP, who also visited the property in 2015, inquired about the criminal background check, and was told by another agent, Heidi, that the policy was meant to assure that the applicant does not have a "criminal record." *Id.* at ¶¶ 25-27.

The third tester, BA, inquired about Azalea Gardens in 2016. When he asked about the criminal background check, Heidi allegedly responded that "[a]nything on the criminal background check will decline [the application]." *Id.* at ¶¶ 29-30 (second alteration in original). However, upon BA's further questions concerning who actually implements Azalea Garden's criminal background check policy and would ultimately make a decision to decline a rental application, Heidi reportedly informed BA that the application is put through a computer and it determines whether or not the application is approved. *Id.* at ¶ 32. In other words, the employees that LaFHAC's testers spoke to do not interpret or implement the policy, nor do they make any decision regarding applications.

The fourth tester, AO, inquired about rentals in early 2017. AO allegedly told Heidi that he had a ten-year-old felony charge for possession of drug paraphernalia on his record and asked if that would affect his application. Heidi allegedly responded that the violation would automatically deny his application. *Id.* at ¶¶ 33-35.

The last tester, BB, called Azalea Garden in November of 2021, and asked if a seven-year-old misdemeanor charge for loitering, which he plead guilty to, would affect the odds of him being able to rent an apartment. The agent allegedly responded "[y]ea, it just depends. Sometimes it will come up and other times it won't." *Id.* at ¶¶ 36-38. When further asked about Azalea Garden's enforcement of its criminal background check policy, the agent reconfirmed to BB that approval

3

decisions are made by a computer system, and the agents the testers spoke to do not interpret or implement the policy. *Id.* at ¶ 39.

The Complaint does not disclose the race of any of the testers, nor does the Complaint state that any of the testers completed an application or that their applications were denied. The Complaint also does not allege that any requests for reasonable accommodations were ever made.

## II.  ARGUMENT

As a threshold issue, this Court lacks subject matter jurisdiction because LaFHAC's claims are not ripe. LaFHAC fails to establish anything more than a hypothetical chance of an improper policy based on an incredibly speculative assumption of what Azalea Garden's actual policy is, making these claims nonjusticiable at this time. Further, even if the Court were to find the claims ripe, LaFHAC's claims are based on rank speculation that cannot survive Rule 12(b)(6). Accordingly, all claims should be dismissed.

### A. LaFHAC's Claims Are Not Ripe- Rule 12(b)(1)

"A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'. . . A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987) (citations omitted) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *modified on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). Where a plaintiff's argument is too speculative, a matter will not be considered ripe. *See United Transp. Union v. Foster*, 205 F.3d 851, 858 (5th Cir. 2000).

### 1. LaFHAC's Disability Discrimination Claims Are Not Ripe

As mentioned above, LaFHAC claims that Azalea Garden's criminal background check policy impermissibly discriminates against those with a disability (drug addiction), and it "refuse[s] to make reasonable accommodations in rules, policies, practices or services … in violation of 42 U.S.C. § 3604(f)(3)(B)." Rec. Doc. 1 at ¶ 83(d). As another section of this Court has acknowledged: "Under the first prong of the ripeness inquiry, which examines the fitness of the issues, the Fifth Circuit has expressly stated that 'under the Fair Housing Act . . . a violation occurs when the disabled resident is ***first denied a reasonable accommodation***, irrespective of the remedies granted in subsequent proceedings.'" *United States v. City of Nola*, 12-2011, 2012 U.S. Dist. LEXIS 173177, at *14 (E.D. La. Dec. 6, 2012) (Feldman, J.) (emphasis added) (quoting *Groome Res., Ltd. v. Par. Of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000)); *see also Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 602 (4th Cir. 1997)).

The Complaint is devoid of any allegation that LaFHAC's testers or anyone else ever even requested an accommodation, much less were denied one. This renders LaFHAC's disability discrimination claim far too hypothetical and speculative to maintain an action. Accordingly, LaFHAC's claim for disability discrimination under the FHA (Count II) is not ripe and should be dismissed.

### 2. Race Discrimination Claims Are Not Ripe

LaFHAC's claims of racial discrimination under the FHA are similarly not ripe at this time. Contrary to Azalea Garden's express policy provided in its application materials (*see* Rec. Doc. 1 at ¶ 14), LaFHAC claims that in reality the policy automatically denies anyone with any criminal record, including misdemeanors and those with arrests without convictions. *See id.* at ¶ 1.[1]

---

[1] Azalea Garden does not concede that this policy would necessarily violate the FHA either.

5

LaFHAC makes this giant leap based on some off-handed remarks from a few agents who were "not exactly sure" how the policy works (*id.* at ¶ 22), whom LaFHAC admits in its pleadings are not tasked with interpreting, implementing, or applying the criminal background check policy, and who do not make any determination regarding acceptance or denial of applications.  *See id.* at ¶¶ 32, 39.  Four out of the five testers are from more than four years ago.  Two of the testers are from more than six years ago.  The most recent tester approached Azalea Garden in 2021 and was expressly told that not all convictions ***do not*** result in rejection: "it just depends.  Sometimes it will come up and other times it won't."  *Id.* at ¶ 38.  LaFHAC's claims based solely on these agents' responses are far too speculative and hypothetical to ripen LaFHAC's claims for race or disability discrimination under the FHA.

    **B.  LaFHAC Fails to State a Claim- Rule 12(b)(6)**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all allegations contained in the complaint as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a plaintiff "must plead specific facts, not mere conclus[ory] allegations, to avoid dismissal for failure to state a claim."  *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).  "Threadbare recitals," will not suffice to defeat a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the ***speculative level***."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).

For many of the same reasons outlined above, LaFHAC has failed to state a claim under the FHA for either race or disability discrimination.  With regard to race discrimination, LaFHAC assumes Azalea Garden has a certain policy based on a few casual comments from employees who LaFHAC acknowledges have no role in interpreting or implementing Azalea Garden's criminal

6

background check policy. In fact, no Azalea Garden employee is even alleged to have stated that Azalea Garden in any way deviates from its written policy. LaFHAC's insinuation to the contrary amounts to nothing more than flimsy assumptions and pure speculation that fails to satisfy Rule 12(b)(6). *See id.*

Further, LaFHAC makes no factual allegations that Azalea Garden's alleged policy does in fact create a racial disparity in Azalea Gardens, much less one that is directly caused by the policy. To state a claim, one must allege that the challenged policy creates a discriminatory effect. *Swantson v. City of Plano*, No. 4:19-cv-412, 2021 U.S. Dist. LEXIS 162212, at *27 (E.D. Tex. Aug. 27, 2021). "[I]n order to cabin disparate-impact liability, the Supreme Court imposes '[a] robust causality requirement' to ensure[]that racial imbalance does not, without more, establish a prima facie case of disparate impact." *Inclusive Cmtys. Project, Inc. v. Heartland Cmty. Ass'n*, 824 F. App'x 210, 213 (5th Cir. 2020) (quoting *Tex. Dep't of Hous. & Cmty Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 542 (2015)). While the Complaint includes several charts purporting to show disparities in the criminal justice system regarding African Americans, none of the data provided suggest a racial imbalance **in Azalea Gardens** or speak to any causal connection to any disparate housing treatment linked to Azalea Garden's alleged criminal background policy. "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Inclusive Cmtys. Project*, 576 U.S. at 543.

LaFHAC's disability discrimination claim fares no better. To commit disability discrimination under the FHA, a defendant must "refus[e] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *see also*

*Groome Res., Ltd.*, 234 F.3d at 199; *Swantson*, 2021 U.S. Dist. LEXIS 162212, at *28. As mentioned above, the Complaint does not contain ***any*** allegation that any requests for reasonable accommodations were made or denied. Without alleging facts to satisfy this essential element, LaFHAC has failed to state a claim.

Further, the Complaint does not provide any factual assertions or sociological data to support LaFHAC's allegation that Azalea Garden's alleged policy "unlawfully discriminates" against people recovering from addiction. *See* Rec. Doc. 1 at ¶ 17. There are no allegations that people recovering from addiction are more likely to have a "criminal record" than those who do not have addiction issues. The bold assumption that the alleged facially neutral policy impermissible discriminates is nothing more than a conclusory allegation devoid of factual support and thus fails to satisfy Rule 12(b)(6). *See Iqbal*, 556 U.S. at 686. Accordingly, LaFHAC has failed to state a claim for disability discrimination under the FHA.

### III.    CONCLUSION

The allegations of LaFHAC's Complaint themselves demonstrate how speculative and unfounded they are. LaFHAC invents a new policy for Azalea Gardens based on out-of-context statements from individuals who have nothing to do with implementing the policy at issue. The hypothetical and underdeveloped factual nature of these allegations render them not ripe and warrant dismissal. Alternatively, LaFHAC fails to allege facts necessary to satisfy essential elements of its claims, which would also require dismissal under Rule 12(b)(6).

Respectfully submitted,

**GORDON, ARATA, MONTGOMERY, BARNETT, McCOLLAM, DUPLANTIS & EAGAN, LLC**

By: /s/ Alex B. Rothenberg
   Michael E. Botnick, T.A. (#3284)

        Phillip J. Antis Jr.,(#29067)
        Alex B. Rothenberg (#34740)
        201 St. Charles Avenue, 40th Floor
        New Orleans, LA 70170-4000
        Phone: (504) 582-1111 Fax: (504) 582-1121
        Email: mbotnick@gamb.com
            pantis@gamb.com;
            arothenebrg@gamb.com;

***Attorneys for Defendant Azalea Garden Properties, LLC***