UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LOUISIANA FAIR HOUSING ACTION
CENTER

CIVIL ACTION

VERSUS

NO: 22-74

AZALEA GARDEN PROPERTIES,
LLC

SECTION: "A" (5)

## ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 6)** filed
by the defendant, Azalea Garden Properties, LLC. The plaintiff, Louisiana Fair Housing
Action Center, opposes the motion. The motion, submitted for consideration on April 13,
2022, is before the Court on the briefs without oral argument. For the following reasons,
the motion is GRANTED IN PART AND DENIED IN PART.

I. **Background**

This action has been brought by the Louisiana Fair Housing Action Center
("LaFHAC") against Azalea Garden Properties, LLC pursuant to the Fair Housing Act of
1968 ("FHA"), as amended, 42 U.S.C. § 3601, *et seq.* LaFHAC is a non-profit entity with
a mission to eradicate housing discrimination in Louisiana. Azalea Garden Properties,
LLC is the owner and operator of an apartment complex known as "Azalea Gardens"
located in Jefferson, Louisiana. LaFHAC alleges that it employed "testers" to pose as
prospective residents and renters and that its efforts have revealed that Azalea Gardens
has violated and continues to violate the Fair Housing Act by discriminating on the basis

of race and disability. LaFHAC seeks declaratory, injunctive, and monetary relief against Azalea Gardens.

To be clear, the Complaint alleges no facts to support the contention that any specific instance of either race or disability discrimination actually occurred at Azalea Gardens. And this is not a case involving disparate treatment, which would implicate discriminatory intent. Instead, LaFHAC's case is one of disparate impact based on what it characterizes as a blanket policy regarding criminal background screenings at Azalea Gardens, and the disproportionate effect that the screenings surely have on the African American community, given statistical data regarding race in the criminal justice system.

The problem, according to LaFHAC, is that Azalea Gardens excludes *all* applicants with *any* criminal history, regardless of the age and nature of the conviction, evidence of rehabilitation, or any other factor related to whether a specific person poses any threat to safety. (Complaint ¶ 16). While criminal history status is *not* a protected trait for purposes of the FHA, LaFHAC alleges that statistics show that a disproportionate number of African Americans are arrested and incarcerated in the United States when compared to white persons, and that this trend is particularly true at the local level in Jefferson Parish where Azalea Gardens is located. Therefore, at the national, state, and local level, African Americans are significantly more likely than whites to have a criminal record. (Complaint ¶ 51). And in Jefferson Parish in particular, African Americans are more likely to be renters than white persons. (*Id.* ¶ 55). Based therefore on statistical data, according to LaFHAC, when blanket bans based on criminal history, like the one allegedly being used at Azalea Gardens, are used to

exclude potential residents, African Americans are disproportionately impacted and the FHA is violated.

LaFHAC alleges that a blanket ban that refuses to rent to anyone with any criminal history not only has a large discriminatory impact on the basis of race but is also not necessary to achieve a legitimate business purpose. (Complaint ¶ 67). LaFHAC asserts that guidance issued in 2016 by the United States Department of Housing and Urban Development ("HUD") supports this position. LaFHAC believes that the more appropriate and non-discriminatory approach would be to give individual consideration to each potential applicant so that the nature of the individual's conviction, the amount of time since the conviction or release, evidence of rehabilitation, and other factors could be considered. (*Id.* ¶ 58). An individualized assessment allows people who have a criminal record, but who pose no realistic current or future threat to the community, to obtain housing, while still protecting public safety, and would reduce the number of African American applicants who are excluded from Azalea Gardens.[1]  (*Id.*).

In support of the claims, the Complaint provides detail for the experiences of five different FHA testers, only two of whom went to the complex in person—three of the testers made phone inquiries only. The Complaint does not mention the race or disability status of any of the testers involved, particularly of the two who went to Azalea Gardens in person. None of the testers actually submitted a rental application and

---

[1]  Although the efficacy of the individualized assessment that LaFHAC advocates is not at issue at this time, it strikes the Court that LaFHAC's approach would be rife with the potential for inconsistent decisions and outright disparate treatment based on FHA protected traits. It would appear that Azalea Gardens' approach to criminal background screenings was intended to avoid that very problem by removing all employee discretion from the rental decision.

underwent a criminal background check, only to have the application denied based on the results of the background check. Rather, the FHA testers in this case were used to pose as interested renters in order to surreptitiously solicit information from Azalea Gardens' staff regarding how its criminal background screening process works.

LaFHAC's claim for disability discrimination is based on the allegation that the blanket ban excludes all persons with any drug related convictions without regard to whether those persons might be diagnosed with an addiction, recovering from that addiction, and not currently using any controlled substance illegally. (Complaint ¶ 17). LaFHAC alleges that employing a policy that excludes all persons with a criminal history that includes all drug-related offenses serves to discriminate based on disability and denies a reasonable accommodation to the affected individuals. (*Id.*). But as with the race claim, there is no allegation as to any specific instance of disability discrimination at Azalea Gardens. And unlike the race claim, the Complaint alleges no statistical or sociological data to support the disability claim, such as data to indicate that persons with drug-related infractions in their criminal history are likely to be recovering from an addiction that qualifies as a disability under federal law.

The crux then of LaFHAC's complaint is that even a facially neutral housing practice that has a disparate impact on the basis of race or disability—two FHA protected traits—is prohibited by the FHA unless it is necessary to achieve a legitimate business purpose that cannot be satisfied through a less discriminatory alternative practice. (Complaint ¶ 42).

Azalea Gardens now moves to dismiss the complaint in its entirety pursuant to

Federal Rule of Civil Procedure 12(b)(1), or alternatively Rule 12(b)(6). Azalea Gardens'

Rule 12(b)(1) argument is that LaFHAC's claims are so hypothetical as to render them

unripe for consideration, thereby depriving a federal court of subject matter jurisdiction.

Even beyond ripeness, Azalea Gardens argues that LaFHAC does not allege sufficient

facts to state a valid claim under the FHA.

The parties' arguments are addressed below.

**II.   Discussion**

### *Governing Standards*

A motion filed pursuant to Rule 12(b)(1) raises the defense of lack of subject

matter jurisdiction. Fed. R. Civ Pro. 12(b)(1); *Ramming v. United States*, 281 F.3d 158,

161 (5th Cir. 2001). Lack of subject matter jurisdiction may be found in any one of three

instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the

court's resolution of disputed facts. *Id.* (citing *Barrera–Montenegro v. United States,* 74

F.3d 657, 659 (5th Cir.1996)). In examining a Rule 12(b)(1) motion, the district court is

empowered to consider matters of fact which may be in dispute.[2] *Id.* (citing *Williamson*

*v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981)). Ultimately, a motion to dismiss for lack of

---

[2] In other words, with a Rule 12(b)(1) motion challenging subject matter jurisdiction the court has broad power to decide its own right to hear the case, even when the decision involves disputed factual determinations. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). But where a Rule 12(b)(1) motion challenges jurisdiction based on the face of the complaint alone, the plaintiff is entitled to similar safeguards as with a Rule 12(b)(6) motion to dismiss, such as having all factual allegations in the complaint taken as true, and being allowed to amend the complaint to cure any deficiencies. *Id.* (citing *Spector v. L Q Motor Inns, Inc.*, 517 F.2d 278, 281 (5th Cir. 1975); *Herpich v. Wallace*, 430 F.2d 792, 802 (5th Cir. 1970)).

subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief. *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998)).

Because Article III, § 2 of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies," federal courts have developed justiciability doctrines such as ripeness and standing, both of which are essential components of subject matter jurisdiction. *Sample v. Morrison,* 406 F.3d 310, 312 (2005) (citing *United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir.2000)). The requirement of ripeness is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* (quoting *National Park Hospitality Ass'n v. Department of Interior,* 538 U.S. 803, 807–08 (2003)).

A case is ripe for adjudication if all remaining questions are legal and further factual development is unnecessary. *Roman Cath. Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 423 (N.D. Tex. 2013) (citing *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 833 F.2d 583, 587 (5th Cir.1987)). A claim is not ripe if it is "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Texas v. United States,* 523 U.S. 296, 300 (1998)).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party

asserting jurisdiction not on the party moving for dismissal. *See Ramming*, 281 F.3d at 161 (citing *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D.Tex.1995)). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id.* (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

In the context of a Rule 12(b)(6) motion to dismiss (as with a Rule 12(b)(1) motion based solely on the face of the complaint) the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However,

the foregoing tenet is inapplicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949.

Thread-bare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555

(2007)). Any ambiguities in the current controlling substantive law must be resolved in

the plaintiff's favor. *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (citing *Burchett v.

Cargill, Inc.,* 48 F.3d 173, 176 (5th Cir.1995)).

The FHA prohibits discrimination in the rental or sale of a dwelling based on

certain protected characteristics, including race and disability. *Inclusive Comm. Project,

Inc. v. Lincoln Property Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citing 42 U.S.C. §

3604(a), (f)). The FHA reflects "the policy of the United States to provide within

constitutional limits, for fair housing throughout the United States." *Id.* at 900-01 (quoting

42 U.S.C. § 3604).

In *Texas Department of Housing and Community Affairs v. Inclusive

Communities Project, Inc.*, 576 U.S. 519, 545 (2015) (hereinafter "*ICP*"), the Supreme

Court held that disparate impact claims are cognizable under the FHA. Unlike disparate

treatment liability, which requires proof of discriminatory intent or motive, disparate

impact liability is based on the discriminatory impact of a facially-neutral policy or

practice and the absence of adequate justification. *Mass. Fair Housing Center v. HUD*,

496 F. Supp. 3d 600, 603-04 (D. Mass. 2020) (citing *ICP*, 576 U.S. at 524). However, a

disparate impact claim that relies on a statistical disparity must fail if the plaintiff cannot

point to a defendant's policy that caused that disparity. *ICP*, 576 U.S. at 542. A "robust

causality requirement" ensures that "[r]acial imbalance . . . does not, without more,

establish a prima facie case of disparate impact" and thus protects defendants from being held liable for racial disparities that they did not create. *Id.* (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989), *superseded by statute on other grounds*, 42 U.S.C. § 2000e-2(k)). The court must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact. *Id.* at 543. A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact. *Id.*

Following the Supreme Court's decision in *ICP*, the Fifth Circuit was called upon in *Lincoln Property, supra*, to address whether an FHA disparate impact case had been properly dismissed at the pleading stage pursuant to Rule 12(b)(6). 920 F.3d at 890. While that case involved a voucher program as opposed to a criminal background screening, it provides important insight regarding the pleading requirements necessary to support an FHA disparate impact claim. When evaluating an FHA disparate impact case, the court employs the burden-shifting analysis derived from HUD's regulation (24 C.F.R. § 100.500(c)(1))—in this circuit, the burden shifting analysis from the regulation had been adopted in *Inclusive Communities Project., Inc. v. Texas Department of Housing and Community Affairs*, 747 F.3d 275, 282 (5th Cir. 2014). But in *Lincoln Property*, the Fifth Circuit concluded that the Supreme Court did not effect a wholesale adoption of HUD's regulation as-is but rather made it somewhat more onerous for the plaintiff. 920 F.3d at 902. The Fifth Circuit explained that *ICP's* robust causality

requirement imposed a stricter and more demanding interpretation of the regulation.[3]
*Lincoln Prop.,* 920 F.3d at 903. The robust causation requirement of *ICP* is not satisfied
simply by identifying an offending policy. *Id.* at 907. Rather, in order to state a prima
facie case of disparate impact under the FHA, the plaintiff must identify both a policy
(attributable to the defendant) and the requisite causal connection between the policy
and the racial disparity being alleged. *Id.* at 908. But of paramount concern is that a
defendant cannot be held liable for a racial disparity that he did not create. *Id.* (quoting
*ICP*, 135 S. Ct. at 2523).

### *Analysis*

The Court begins with Azalea Gardens' contention that in pleading its case
LaFHAC has essentially misstated the actual policy that Azalea Gardens employs
regarding criminal background screenings thereby rendering the FHA disparate impact
claim unripe and depriving this Court of subject matter jurisdiction. Azalea Gardens has

---

[3] The Supreme Court's *ICP* decision arose out of the grant of certiorari in the 2014 *Inclusive Communities Project case, supra*, wherein the Fifth Circuit had adopted the 2013 version of HUD's burden-shifting approach found in 24 C.F.R. § 100.500. 747 F.3d at 282. Whether the legal framework from the 2013 regulation was actually adopted by the Supreme Court in *ICP* has been the subject of debate. *See Southwest Fair Housing Council, Inc. v. Maricopa Domestic Water Improv. Dist.*, 17 F.4th 950, 961 n.6 (9th Cir. 2021). The *Lincoln Property* court noted the same lack of clarity in *ICP*. 920 F.3d at 902 ("Although it affirmed our decision, the Supreme Court never explicitly stated that it adopted the HUD regulation's framework.").

In 2020 HUD attempted to amend 24 C.F.R. § 100.500 to reflect its understanding of *ICP* but in *Massachusetts Fair Housing Center v. HUD*, 496 F. Supp. 3d 600 (D. Mass. 2020), the district court granted a preliminary injunction and stayed the implementation of the new 2020 regulation. As of this writing, the 2020 proposed HUD rule remains stayed. A joint status report recently filed in the Massachusetts case explains that HUD voluntarily dismissed its appeal of the injunction, has reconsidered the 2020 proposed rule, and is now proposing to recodify the 2013 rule. (CA 20-11765, D. Mass. Rec. Doc. 54, 4/1/22 Joint Status Report). That proposed action is currently proceeding along the administrative rule-making process. It would appear then that the now-enjoined 2020 HUD regulation is a moot point.

a written policy in place regarding how the criminal background screening process works, and Azalea Gardens accuses LaFHAC of ignoring that policy, and instead relying on off-handed remarks from low-level staff—employees who have no role in implementing, applying, or interpreting the actual criminal background screening policy being used—to craft a more restrictive policy in order to make out a case. Azalea Gardens contends that the employee quotes recited in the Complaint are not inconsistent with the written policy, which is the actual policy being used at the complex. Invoking the ripeness doctrine, which allows district courts to resolve factual issues, Azalea Gardens urges the Court to resolve this potential factual issue in its favor, and to dismiss the Complaint for lack of subject matter jurisdiction.

The ripeness doctrine is not implicated in this case, particularly with respect to the question of what the *de facto* criminal background screening policy at Azalea Gardens might be. The factual dispute regarding the contours of the Azalea Gardens' criminal background criteria does not arise due to prematurity or any contingency on future events that may not occur, in other words the kinds of uncertainty that render a case unripe. Azalea Gardens contends that LaFHAC is factually incorrect in the policy being used and that the factual allegations in the complaint are internally inconsistent. This factual dispute does not go to subject matter jurisdiction, and must be resolved in the plaintiff's favor at this juncture. Although the Complaint does emphasize a blanket ban, and the Court notes that the written policy quoted in the Complaint is not a blanket ban, (Complaint ¶ 14), the Court does not read the Complaint so narrowly because it is conceivable that something short of a complete ban could potentially run afoul of the

FHA. *See Jones v. City of Faribault*, No. 18-1643, 2021 WL 1192466, at *18 n.13 (D. Minn. Feb. 18, 2021) (noting the potential problem with a non-blanket criminal records-based barrier to renting). Therefore, notwithstanding Azalea Gardens' efforts to persuade the Court that the facts alleged taken as true demonstrate something short of a blanket ban, dismissal for failure to state a claim would not be appropriate. And again, ripeness is simply not implicated here.

The Court turns to whether LaFHAC has alleged sufficient facts to state a claim for relief on its disparate impact FHA claim, beginning with the race-based claim. The Court accepts as true at the pleading stage that the criminal background screening policy being used at Azalea Gardens—whether it be a blanket ban or something short of that—disproportionately affects and excludes certain applicants based on race, even if not done intentionally. The statistical data cited by LaFHAC, which the Court also accepts as true at this stage, makes this allegation plausible.

While the Complaint in this case contains an allegation as to an allegedly offending policy, something that the *ICP* Court stressed must be present in an FHA disparate impact case, what is missing in this case is an allegation regarding an actual racial disparity connected to that policy. The racial disparity that this case depends upon at the pleading stage is theoretical and completely speculative, grounded only on statistical data from the criminal justice system, that may not even bear out insofar as Azalea Gardens' activities are concerned.

The 2013 version of HUD's regulation that remains in effect today in light of the injunction issued in *Massachusetts Fair Housing Center*, see note 3 above, defines

discriminatory effect to include not only instances where a practice caused in a disparate impact but also those where it "predictably will cause" a disparate impact. 24 C.F.R. § 100.500(c)(1) (2013). LaFHAC's case is that the criminal background screening process at Azalea Gardens "predictably will cause" a disparate impact based on race.

The Court agrees with Azalea Gardens' contention that this Court is bound by Fifth Circuit and Supreme Court precedent, as opposed to HUD's guidance, (Rec. Doc. 13, Reply at 5), but no controlling precedent (or any non-controlling that the Court has located) suggests that in defining the contours of discriminatory effect for purposes of an FHA disparate impact claim a plaintiff cannot base a case on the "predictably will cause" aspect of the 2013 HUD regulation which remains in effect today. *Lincoln Property* did not disturb this circuit's prior adoption of aspects of 24 C.F.R. § 100.500 except as necessary to comport with *ICP*'s more demanding robust causation requirement. At the very least, the question whether a disparate impact claim may be grounded on the "predictably will cause" aspect of discriminatory effect described in the regulation is an uncertainty or ambiguity in the current controlling substantive law, and the Court resolves it, as it must, in the plaintiff's favor.

The Court is therefore persuaded that the plaintiff has alleged a prima face case of disparate impact that includes a policy of the defendant that predictably will cause a discriminatory effect. The Court concludes only that the Complaint survives the pleading stage on the race claim. Whatever the theoretical impact of a criminal background policy, whether it be a complete ban or something short of that, if a defendant cannot be

liable for a racial disparity that it did not create—which the Supreme Court stressed in

*ICP*, 576 U.S. at 542 (quoting *Wards Cove Packing*, 490 U.S. at 653)—then it certainly

cannot be liable for a problem that did not materialize in accordance with statistical

predictions, which may be the case here. In other words, relying on statistical data in

support of a predictive outcome may get the plaintiff past the pleading state, but the

defendant cannot be liable for violating the FHA if its implementation of its criminal

background policy does not produce the outcome anticipated by those statistics.

      The motion to dismiss is therefore denied as to the disparate impact race claim.

      As to the disability claim, the allegations fail to state a claim for a violation of the

FHA. Under the FHA, it is unlawful to deny a dwelling to a renter because of a

"handicap." 42 U.S.C. § 3604(f). A "handicap" means a physical or mental impairment

which substantially limits one or more of such person's major life activities, but does not

include *current*, illegal use of or addiction to a controlled substance. *Id.* § 3602(h)(1).

Discrimination under this section includes a refusal to make a reasonable

accommodation in rules or policies, when such an accommodation may be necessary to

afford a person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

Synthesizing the foregoing definitions, an individual recovering from drug addiction, *i.e.*,

not currently using illegal drugs, may be "handicapped" under the FHA if that addiction

substantially limits one or more of his major life activities. *Harmony Haus Westlake, LLC*

*v. Parkstone Prop. Owners Assoc.*, 851 Fed. Appx. 461, 463 (5th Cir. 2021)

(unpublished).

      LaFHAC's disability claim is not supported by any statistical data that would

suggest that individuals with drug convictions on their record are not only likely to be recovering from drug addiction, but suffering from an addiction that substantially limits one or more major life activities. That determination would have to be made on a case by case basis. Not every person who uses or used illegal drugs will be disabled under the FHA, and LaFHAC points to nothing to suggest that there is any statistical data to suggest that those persons whose drug addiction does qualify as a disability are likely to have a criminal record. This case lacks any facts to support a causal link, much less a "robust" one as required by controlling law, to support a disparate impact claim grounded on disability. The proposed amendments that LaFHAC would make to cure its deficiencies, (Rec. Doc. 10, Opposition at 14-15), have nothing to do with curing the deficiencies noted with respect to the disability claim.

The motion to dismiss is therefore granted as to the disparate impact disability claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 6)** filed by the defendant, Azalea Garden Properties, LLC, is **GRANTED IN PART AND DENIED IN PART** as explained above.

April 27, 2022

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE